UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK P.C.,

                                        Plaintiff,

                - against -                                          **11-cv-2730 (LLS)**

JOHN M. O'QUINN & ASSOCIATES, L.L.P D/B/A
THE O'QUINN LAW FIRM,

                                        Defendant.
-----------------------------------------------------------------X


**PLAINTIFF ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK P.C.'S
MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT JOHN M. O'QUINN & ASSOCIATES LLP'S:**

(i)     **MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, OR
        IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE;**

(ii)    **MOTION TO STAY OR DISMISS PROCEEDINGS PENDING
        ARBITRATION; AND**

(iii)   **MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**


                            Robinson Brog Leinwand Greene
                             Genovese & Gluck P.C.
                            875 Third Avenue
                            New York, New York 10022
                            Tel.  212-603-6300
                            Fax  212-956-2164
                            *Attorneys for Plaintiff*

{00564398.DOC;1 }

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii-iv

INTRODUCTION .......................................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................. 2

ARGUMENT ................................................................................................................................. 2

POINT I

DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL
JURISDICTION, OR IN THE ALTERNATIVE, TO TRANSFER VENUE
SHOULD BE DENIED IN ITS ENTIRETY .............................................................................. 2

    A.   DEFENDANT IS SUBJECT TO PERSONAL JURISDICTION IN NEW YORK ....... 2

    B.   A TRANSFER OF VENUE IS INAPPROPRIATE ...................................................... 13

POINT II

DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER
JURISDICTION SHOULD BE DENIED IN ITS ENTIRETY ................................................ 18

    A.   UNDER APPLICABLE LAW, THERE IS NO BASIS TO FORCE
        ROBINSON BROG TO ARBITRATE ITS CLAIMS AGAINST O'QUINN ............. 19

POINT III

DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE
A CLAIM SHOULD BE DENIED ............................................................................................ 27

    A.   ROBINSON BROG'S AMENDED COMPLAINT
        MEETS THE PLEADING STANDARD ..................................................................... 29

    B.   ROBINSON BROG'S DAMAGES ARE NOT SPECULATIVE
        AND SURVIVE A MOTION TO DISMISS ............................................................... 31

CONCLUSION ............................................................................................................................. 32

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal,*
    556 U.S. 662, 129 S. Ct. 1937 (2009)................................................................27, 28

*Bank of Am. Nat. Ass'n v. Sopher,*
    10 CIV. 8870 LTSKNF, 2011 WL 2419872 (S.D.N.Y. June 8, 2011) ...................................24

*Bastille Properties, Inc. v. Hometels of Am., Inc.,*
    476 F. Supp. 175 (S.D.N.Y. 1979) ........................................................................3, 4, 6

*Bell Atlantic Corp. et al. v. Twombly,*
    550 U.S. 544 (2007)................................................................................27, 28

*Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir. 1996) ...........................................................29

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462, 105 S. Ct. 2174 (1985)........................................................................12

*Chambers v. Time Warner, Inc.,*
    282 F.3d 147 (2d Cir.2002) ........................................................................28

*CutCo Indus., Inc. v. Naughton,*
    806 F.2d 361 (2d Cir. 1986) ..........................................................................2

*DCA Food Indus. Inc. v. Hawthorn Mellody, Inc.,*
    470 F. Supp. 574 (S.D.N.Y. 1979) ........................................................................18

*DiFolco v. MSNBC Cable L.L.C.,*
    622 F.3d 104 (2d Civ 2010)........................................................................28

*Dorchester Pub. Co. v. Lanier,*
    01 CIV. 8792 (DAB), 2006 WL 4388035 (S.D.N.Y. Mar. 19, 2006)...................................31

*E.E.O.C. v. Plaza Operating Partners, Ltd.,*
    03 CIV.7680 LTS FM, 2004 WL 1803269 (S.D.N.Y. Aug. 13, 2004)...................................10

*First Options of Chicago, Inc. v. Kaplan,*
    514 U.S. 938, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995)...........................................20

*Friedl v. City of New York,*
    210 F.3d 79 (2d Cir. 2000) ........................................................................28

*George Reiner & Co., Inc. v. Schwartz,*
    41 N.Y.2d 648, 363 N.E.2d 551 (1977)........................................................................4, 5

*Global Network Communications, Inc. v. City of New York,*
  458 F.3d 150 (2d Cir. 2006) ...........................................................................28

*International Shoe Co. v. Washington,*
  326 U.S. 310, 66 S.Ct. 154 (1945)...............................................................11, 12

*Lazard Freres & Co. v. Protective Life Ins. Co.,*
  108 F.3d 1531 (2d Cir. 1997) .........................................................................16

*Lehigh Valley Indus., Inc., v. Birenbaum,*
  527 F.2d 87 (2d. Cir. 1975) ............................................................................5

*MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC,*
  268 F.3d 58 (2d Cir. 2001) .........................................................................22, 23

*Masefield AG v. Colonial Oil Indus., Inc.,*
  05 CIV. 2231 (PKL), 2005 WL 911770 (S.D.N.Y. Apr. 18, 2005) ........................23

*Milberg Factor, Inc. v. Atl. Wholesale, Inc.,*
  99 CIV. 1218 DLC, 1999 WL 1000922 (S.D.N.Y. Nov. 4, 1999)..........................17

*Navaera Sciences, LLC v. Acuity Forensic Inc.,*
  667 F. Supp. 2d 369 (S.D.N.Y. 2009) ...............................................................6

*Oppenheimer & Co. Inc. v. Deutsche Bank AG,*
  09 CIV. 8154(LAP), 2010 WL 743915 (S.D.N.Y. Mar. 2, 2010)......................22, 23

*PaineWebber Inc. v. Westgate Group, Inc.,*
  748 F. Supp. 115 (S.D.N.Y. 1990) ....................................................................6

*Phoenix Companies, Inc. v. Abrahamsen,*
  No. 05 Civ. 4894(WHP), 2006 WL 2847812 (S.D.N.Y. Sept. 28, 2006) ................23

*Rosen v. Mega Bloks Inc.,*
  06 CIV 3474 LTS GWG, 2007 WL 1958968 (S.D.N.Y. July 6, 2007) ...................26

*Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc.,*
  269 F. Supp. 2d 356 (S.D.N.Y. 2003) ..............................................................24

*Specht v. Netscape Communications Corp.,*
  306 F.3d 17 (2d Cir. 2002) ............................................................................26

*Spitz v. Lesser,*
  302 N.Y. 490, 99 N.E.2d 540 (1951)................................................................31

*Steel v. Watch Hill Mgmt. Corp.,*
  08-CV-1698GBD, 2009 WL 667242 (S.D.N.Y. Mar. 16, 2009) ...........................10

*Tagare v. NYNEX Network Sys. Co.,*
    921 F. Supp. 1146 (S.D.N.Y. 1996) ..................................................................32

*Thomson-CSF, S.A. v. Am. Arbitration Ass'n,*
    64 F.3d 773 (2d Cir. 1995) ............................................................21, 22, 23

*Volt Info. Sciences v. Board of Trustees of Leland Stanford Jr. Univ.,*
    489 U.S. 468, 109 S.Ct. 1248 (1989)...........................................................26

*Waldron v. Goddess,*
    61 N.Y.2d 181, 461 N.E.2d 273 (1984)..........................................................20

*World-Wide Volkswagen Corp. v. Woodson,*
    444 U.S. 286, 100 S.Ct. 559 (1980)...............................................................12

**STATUTES**

28 U.S.C. § 1404(a) ...................................................................................13

CPLR § 301 ........................................................................................10, 11

CPLR § 302 .......................................................................................2, 4-10

**OTHER AUTHORITIES**

FRCP 8(a)(2) .............................................................................................27

FRCP 12(b)(1) ...................................................................1, 19, 20, 21, 27

FRCP 12(b)(2) ..............................................................................................1

FRCP 12(b)(6) .....................................................................1, 27, 28 29

Williston on Contracts § 64:2 (4th ed. 2000) .............................................30

Plaintiff Robinson Brog Leinwand Greene Genovese & Gluck P.C. ("Robinson Brog" or the "Firm") respectfully submits this memorandum of law in opposition to defendant John M. O'Quinn & Associates, LLP d/b/a The O'Quinn Law Firm ("O'Quinn" or "Defendant")'s: (i) motion pursuant to FRCP 12(b)(2) to dismiss for lack of personal jurisdiction, or in the alternative, to transfer venue; (ii) motion pursuant to FRCP 12(b)(1) to stay or dismiss proceedings pending arbitration; and (iii) motion pursuant to FRCP 12(b)(6) to dismiss for failure to state a claim, all dated January 5, 2012 (collectively, the "Motions to Dismiss").[1]  For the reasons set forth herein and in the accompanying Declaration of Alan M. Pollack, dated February 17, 2012 (the "Pollack Declaration"), and the exhibits thereto, O'Quinn's Motions to Dismiss should be denied in their entirety.

## INTRODUCTION

O'Quinn seeks to wash its hands of its agreement with Robinson Brog and Christian Smith & Jewell LLP (CS&J) to fund and jointly prosecute a litigation on behalf of victims of stock fraud and manipulation (the "Escala Litigation").  Defendant does so after Robinson Brog expended significant time, money and effort in furtherance of the Escala Litigation and with O'Quinn's full knowledge and consent.  Straight out of the defense playbook, O'Quinn tries to avoid litigating the case in New York in any way it can – first by making the artificial claim that it is not subject to personal jurisdiction in New York despite having negotiated and entered into the agreement at issue here – and then by attempting to force an arbitration pursuant to a separate agreement to which Robinson Brog is not a party.  O'Quinn's third attempt to walk away from the deal it made, but no longer wishes to honor, is to improperly challenge Robinson Brog's

---

[1]  Robinson Brog is filing one memorandum of law in opposition to Defendant's three Motions to Dismiss in anticipation of the Court consolidating the Motions to Dismiss.

damages claims.  Try as it might, O'Quinn can no longer avoid the consequences of abandoning its obligations.

## STATEMENT OF FACTS

The facts of this case are set forth at length, with specificity and particularity, in Robinson Brog's Amended Complaint, dated November 22, 2011 (the "Amended Complaint"), and therefore will not be reiterated herein, except to support a specific argument.

## ARGUMENT

**I.   DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, OR IN THE ALTERNATIVE, TO TRANSFER VENUE SHOULD BE DENIED IN ITS ENTIRETY**

### A.   DEFENDANT IS SUBJECT TO PERSONAL JURISDITION IN NEW YORK

Personal jurisdiction over a defendant in a diversity action is determined by the law of the forum in which the court is located.  *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986).

#### 1.   O'Quinn is Subject to Specific Jurisdiction in New York

##### a.   CPLR 302(a)(1)

New York Civil Practice Law and Rules ("CPLR") § 302(a)(1) provides for jurisdiction over non-domiciliaries on causes of action arising from their transaction of any business in the state.  A non-domiciliary is found to transact business within the state for purposes of CPLR 302(a)(1) if it "'purposefully avails [itself] of the privilege of conducting activities within [New York].'"  *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986) (*citing McKee Electric Co. v. Rauland-Borg Corp.,* 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34 (1967) (internal quotations omitted)).

Robinson Brog's claims in this action arise directly from Defendant's breach of the agreement between O'Quinn, CS&J and Robinson Brog, which was negotiated and reached at a meeting in Robinson Brog's offices in New York. (Amended Complaint, ¶ 1, 15-22; Christian Dep. at 22-25.)[2] The agreement contemplated that (i) O'Quinn would fund the Escala Litigation, including paying all expenses, in exchange for which Robinson Brog and CS&J would jointly prosecute the case with O'Quinn, and (ii) the net attorneys' fees would be divided among the firms according to specific percentages. (Amended Complaint, ¶ 1, 18-20; Christian Dep. at 24-25.) O'Quinn violated the agreement by refusing to continue funding the litigation, after Robinson Brog performed substantial legal services and expended significant expenses. Amended Complaint, ¶ 1, 26, 44, 49, 74.

When an agreement is negotiated in New York, specific jurisdiction may be exercised over a non-domiciliary regardless of "whether the negotiations are preliminary, or whether the contract is executed in New York, or whether performance is contemplated for New York." *Bastille Properties, Inc. v. Hometels of Am., Inc.*, 476 F. Supp. 175, 176-77 (S.D.N.Y. 1979). The number of visits made to New York by the non-domiciliary to negotiate the agreement is not dispositive as long as the discussions "significantly advance the making of a corporate contract of importance." *Id.* at 177, *quoting ECC v. Slater Electric, Inc.,* 336 F.Supp 148, 152 (E.D.N.Y. 1971).

In *Bastille*, plaintiffs alleged the non-domiciliary defendant retained them for their services in preparing a financial report. *Id.* at 176. The defendant in *Bastille* entered New York to negotiate the agreement, and after two days of negotiation "shook hands" on a deal. *Id.* Judge Carter held that the non-domiciliary defendant was subject to personal jurisdiction in New York

---

[2] References to the "Christian Dep. at __" refer to specific pages of the Deposition of James W. Christian, taken November 2, 2011, which are attached as Exhibit 3 to the Pollack Declaration.

under CPLR 302(a)(1), despite the fact that it executed the contract without the state, because the negotiations in New York "significantly advanced" the making of the contract. *Id.* at 177.

Here, not only did O'Quinn come to New York in June 2007 for the specific purpose of negotiating an agreement with Robinson Brog, the parties entered into that agreement in New York. (Amended Complaint, ¶1, 15-22; Christian Dep. at 24-25.) The agreement was later memorialized in the written Joint Responsibility Referral Fee Letter Agreement, dated as of October 26, 2007, between O'Quinn, Christian Smith & Jewell, LLP ("CS&J") and Robinson Brog (the "Joint Responsibility Agreement"),[3] which reflected the substantive terms of the deal that the parties reached at their meeting in Robinson Brog's offices. (Amended Complaint, ¶ 22; Christian Dep. at 30.) Such terms included the agreement to jointly represent clients in the Escala Litigation, O'Quinn's responsibility for payment of expenses, and the precise division of attorneys' fees among O'Quinn, CS&J, and Robinson Brog. (Amended Complaint, ¶ 22; Christian Dep. at 24-25.) Clearly, and at the very minimum, the June negotiations "significantly advanced" the making of a contract. Even more so, an agreement was reached that day by all parties. (Amended Complaint, ¶ 21; Christian Dep. at 24-25.)

New York Court of Appeals jurisprudence mandates the same result. Where a Massachusetts domiciliary came into New York for a single day to negotiate and enter into an employment contract, the New York Court of Appeals held that "negotiating and contracting the purposeful creation of a continuing relationship with a New York corporation" was sufficient grounds for an appropriate implementation of long-arm jurisdiction. *George Reiner & Co., Inc. v. Schwartz*, 41 N.Y.2d 648, 653, 363 N.E.2d 551, 551-52 (1977). Of course, that is precisely what happened here. O'Quinn entered New York for the specific purpose of negotiating and establishing an agreement with Robinson Brog, whereby the parties anticipated a continuing

---

[3] (Pollack Exhibit 1.)

relationship as the Escala Litigation progressed.  Such negotiations were held and an agreement was reached at Robinson Brog's offices, which was relied upon by Robinson Brog over the course of years.  (Amended Complaint, ¶ 15-22, 25; Christian Dep. at 24-25.)  These facts render plaintiff's claims, the "clearest sort of case" whereby CPLR 302 jurisdiction should be exercised.  *George Reiner & Co., Inc.*, 41 N.Y.2d at 652-53.

Apparently recognizing the jurisdictional consequences of its purposeful conduct in New York, O'Quinn fumbles for authority to support its baseless argument that its negotiations and entry into the agreement in New York was insufficient to confer personal jurisdiction for claims arising from that agreement.  The cases cited, however, are inapposite because they involved situations where the meetings were only initial in nature and did not involve the substantial negotiation of, or entry into, an agreement.

In *Lehigh Valley Indus., Inc., v. Birenbaum*, 527 F.2d 87 (2d. Cir. 1975), the parties did not actually form an agreement in New York, whereas here O'Quinn, CS&J and Robinson Brog negotiated and reached an agreement at their meeting.  (Amended Complaint, ¶ 15-22; Christian Dep. at 24-25.)  Furthermore, the *Birenbaum* court specifically stated that a finding of "meaningful presence" would not necessarily have been precluded, if there had been substantial negotiations in New York leading to execution of the contract.  *Birenbaum,* 527 F.2d at 91.  Here, O'Quinn met with Robinson Brog in New York for the specific purpose of negotiating an agreement and made such an agreement in New York.  (Amended Complaint, ¶ 1, 15-22; Christian Dep. at 22-25.)  Applying the analytical framework articulated in *Birenbaum* to the pleaded facts in plaintiff's Amended Complaint, O'Quinn is subject to personal jurisdiction in New York.

Even more tenuous is Defendant's reliance on *Navaera Sciences, LLC v. Acuity Forensic Inc.,* 667 F. Supp. 2d 369 (S.D.N.Y. 2009). The plaintiff in *Navaera* did not allege that the non-domiciliary defendant negotiated the agreement or agreed to any of its terms in New York. *Id.* at 376. In fact, the *Navaera* Court explicitly stated that a defendant's negotiations in New York could support a finding of jurisdiction if they were "substantial" and led to an agreement. *Id.* at 375; *see also Bastille, supra*, 476 F. Supp. 175 (finding jurisdiction proper where negotiations "significantly advanced" the making of the contract). As this is exactly what Robinson Brog does allege, the critical factual distinction is fatal to O'Quinn's comparison.

Making passing reference to *PaineWebber Inc. v. Westgate Group, Inc.*, 748 F. Supp. 115, 120 (S.D.N.Y. 1990), O'Quinn also attempts to argue that because the Escala Litigation was to be ultimately filed in Georgia, the fact that the agreement was both negotiated and reached in New York is diminished. However, *PaineWebber* does not stand for the proposition asserted by O'Quinn. In fact, *PaineWebber* stands for a proposition detrimental to O'Quinn's efforts to evade personal jurisdiction in New York – that the negotiation of a contract is more important to a CPLR 302(a) analysis than the mere act of memorializing and executing it, even when there is a minor modification. *Id.* at 120. Furthermore, the *PaineWebber* court's ultimate finding against personal jurisdiction was based on multiple factors, including that (i) the negotiation of the parties' agreement did not occur in New York, (ii) the defendant therein never directed or requested the plaintiff to perform services in New York, and (iii) the plaintiff did not perform the major services for which it was hired in New York. *Id.* at 120-21. In the case at bar, O'Quinn negotiated and entered into the agreement in New York and Robinson Brog, a New York law firm, was to provide, and did provide legal services from its only office in New York.

While it is clear that O'Quinn's purposeful entry into New York to negotiate and reach the agreement at issue with Robinson Brog, a New York law firm, is enough to confer personal jurisdiction over O'Quinn pursuant to CPLR 302(a)(1), O'Quinn is also subject to personal jurisdiction in New York because it continued to transact business in New York in furtherance of that agreement, both directly, and through its designated "point-man", Wes Christian of the CS&J firm, who is an attorney admitted to practice law in both Texas and New York. (Amended Complaint, ¶ 5, 14, 23, 25.; Christian Dep. at 6, 48-49.) With respect to Robinson Brog, "O'Quinn continually authorized CS&J and Robinson Brog to perform work and incur fees and expenses on the Escala Litigation, which he ratified. O'Quinn first directly conveyed its approval to Robinson Brog at the June, 2007 meeting in New York and thereafter did so indirectly through its agent, Mr. Christian." (Amended Complaint, ¶ 25.) In furtherance of its agreement to fund the Escala Litigation, O'Quinn also met with John Finnerty, a New York expert who O'Quinn retained. (Amended Complaint, ¶ 5.) O'Quinn has produced copies of checks and ledger entries evidencing payments it made to Mr. Finnerty for work Mr. Finnerty performed on the Escala Litigation after the June, 2007 meeting in New York. (Pollack Exhibit 4 (numerous payments allocated to "Escala" made between July of 2007 and March of 2008 on invoices bearing the same dates.)) Moreover, O'Quinn has produced copies of checks and ledger entries demonstrating that it also made several payments for work related to "Escala" to Koerner Kronenfeld Partners, a New York public relations firm, on invoices dating between August and December of 2007. (Pollack Exhibit 5; Amended Complaint, ¶ 6.)

O'Quinn's final argument is based on the erroneous notion that there is a Texas choice-of-law provision in its agreement with Robinson Brog which the Court should consider in its analysis. The Joint Responsibility Agreement simply does not contain a choice-of-law provision,

much less one favoring Texas law. (Pollack Exhibit 1.) The choice-of-law provision on which

O'Quinn relies is present in the <u>Client Agreement</u> between O'Quinn and the clients, to which

Robinson Brog is <u>not</u> a party. Robinson Brog does not base any of its claims against O'Quinn on

the Client Agreement, nor could it. Robinson Brog's claims arise out of the agreement reached

at the June 2007 New York meeting which was later memorialized in the Joint Responsibility

Agreement. Robinson Brog and O'Quinn are both law firms, which explicitly omitted a choice-

of-law provision in the Joint Responsibility Agreement that governs their relationship.

Moreover, for the reasons set forth in Point I(B)(6), *infra*, New York law governs this dispute.

As such, O'Quinn's reliance on choice-of-law provision in a contract not at issue herein is

unavailing.

By entering New York to negotiate the terms of an agreement with a New York entity,

O'Quinn subjected itself to personal jurisdiction in New York for claims arising from that

agreement.

### b.   <u>CPLR 302(a)(2) and (3)</u>

It its motion O'Quinn fails to address other legitimate grounds for exercising long-arm

jurisdiction supported by CPLR 302(a)(2) and (3), arising out of plaintiff's negligent

misrepresentation claim. CPLR 302(a)(2) provides for jurisdiction over a defendant arising out

of a tortious act committed within the state. CPLR 302(a)(3) provides for jurisdiction over a

defendant arising out of a tortious act committed outside the state, when defendant (i) regularly

does or solicits business, or engages in any other persistent course of conduct in the state, or (ii)

expects or should reasonably expect the act to have consequences in the state and derives

substantial revenue from interstate or international commerce.

Based on the allegations in the Amended Complaint, jurisdiction is proper under CPLR 302(a)(2) and (3).  Robinson Brog alleges in the alternative that defendant extolled the virtues of the potential Escala Litigation, and in reliance on that representation Robinson Brog agreed to jointly prosecute the Escala Litigation and consequently incurred expenses and fees which O'Quinn now refuses to reimburse.  Defendant's statements to Robinson Brog, directly at its meeting with Robinson Brog in New York, were false or misleading with respect to material facts regarding O'Quinn's beliefs, understanding and willingness to finance and jointly prosecute the Escala Litigation. (Amended Complaint, ¶ 66.)

To the extent O'Quinn's statements and representations at the June 2007 meeting in New York were false and were made with the intention of causing Robinson Brog to rely on them, the elements of CPLR 302(a)(2) have been met.

To the extent O'Quinn later falsely represented, from Texas, its continued belief in the merits of prosecuting the Escala Litigation, and Robinson Brog relied on such representations in incurring fees and expenses, which injured Robinson Brog when O'Quinn precipitously withdrew its funding, the Amended Complaint alleges facts sufficient to confer jurisdiction under CPLR 302(a)(3).  The additional requirements of (a)(3) are met here because O'Quinn regularly does business in New York, and otherwise engages in a persistent course of conduct in New York.  *See* Point I, A, 2, *infra*.  Furthermore, (a) O'Quinn expected or reasonably expected its cessation of funding to have consequences in New York, where Robinson Brog is located and incurred fees and expenses in reliance on O'Quinn's promises and representations to fund the litigation (Amended Complaint ¶ 25), and (b) O'Quinn derives substantial revenue from interstate commerce owing to its participation and representation in numerous class-action law

suits around the country involving clients of various states, from which it received and continues to receive millions of dollars. (Amended Complaint ¶ 10; Christian Dep. at 46.)

For the foregoing reasons, O'Quinn is also subject to personal jurisdiction in New York under CPLR 302(a)(2) and, in addition, CPLR 302(a)(3).

## 2.   O'Quinn is Subject to General Jurisdiction in New York

Alternatively, O'Quinn is also subject to general jurisdiction in New York.  Under CPLR 301, a non-domiciliary is subject to general jurisdiction where it is found to be "doing business" within the state with a fair measure of permanence and continuity.  *Steel v. Watch Hill Mgmt. Corp.,* 08-CV-1698GBD, 2009 WL 667242 (S.D.N.Y. Mar. 16, 2009) (quotations omitted).  In determining whether the CPLR 301 standard is met, "[t]he essential factual inquiry is whether the defendant has a permanent and continuous presence in the state, as opposed to merely occasional or casual contact with the state. " *E.E.O.C. v. Plaza Operating Partners, Ltd.,* 03 CIV.7680 LTS FM, 2004 WL 1803269 (S.D.N.Y. Aug. 13, 2004) (citation omitted).

O'Quinn has been regularly conducting business in New York and with New York entities for nearly a decade.  In addition to the New York contacts discussed above, Robinson Brog has alleged, and jurisdictional discovery has shown, that:

  a.    O'Quinn has represented New York residents in legal proceedings (Amended Complaint, ¶ 6; Christian Dep. at 18-19);

  b.    On behalf of Defendant, John O'Quinn met in New York with one or more potential New York clients (Amended Complaint, ¶ 6; Christian Dep. at 20-21);

  c.    Over the course of many years, O'Quinn attorneys, including John O'Quinn, represented clients by appearing and/or otherwise actively participating in numerous cases pending in either the state or federal courts of New York, including cases pending in the United States District Court for the Southern District of New York (collectively, "O'Quinn's New York Cases") (Amended Complaint, ¶ 6; Christian Dep. at 8-14);

d.   One or more of O'Quinn's New York Cases remained pending in the United States District Court for the Southern District of New York until 2010 (Amended Complaint, ¶ 6);

e.   One or more O'Quinn attorneys, including John O'Quinn, were admitted *pro hac vice* in this Court and other courts located in New York with respect to certain of O'Quinn's New York Cases (Amended Complaint, ¶ 6; Christian Dep. at 13-14; Pollack Exhibit 8);

f.   O'Quinn hired local New York counsel in connection with O'Quinn's New York Cases, communicated with such New York counsel verbally, in writing and in person, and paid such New York counsel for work they performed on such cases in New York; (Amended Complaint, ¶ 6; Christian Dep. at 15-16; Pollack Exhibits 8 and 9);

g.   O'Quinn approved documents that were filed and/or served in O'Quinn's New York Cases, including without limitation, complaints, motions, papers in opposition to motions, and mediation statements; (Amended Complaint, ¶ 6; Christian Dep. at 16);

h.   O'Quinn hired New York-based experts in connection with O'Quinn's New York Cases and paid such New York experts for work they performed in New York with respect to such cases; (Amended Complaint, ¶ 6; Christian Dep. at 17);

i.   John O'Quinn appeared in New York in connection with a mediation in one or more of O'Quinn's New York Cases; (Amended Complaint, ¶ 6; Christian Dep. at 21-22); and

j.   O'Quinn hired and paid Koerner Kronenfeld Partners, a New York public relations firm, to promote O'Quinn and John O'Quinn in New York, including promoting the branding and image of each. (Amended Complaint, ¶ 6; Christian Dep. at 17-18; Pollack Exhibits 5, 6, 10).

Based on O'Quinn's contacts with New York, it is beyond peradventure that sufficient contacts exist to establish defendant has been "doing business" in New York to confer jurisdiction under CPLR 301.

### 3.   Subjecting O'Quinn to Jurisdiction in New York Does Not Offend Due Process

A court must also consider whether subjecting a non-domiciliary to jurisdiction in the state satisfies "traditional conceptions of fair play and substantial justice." *International Shoe*

*Co. v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154 (1945). Exercise of jurisdiction does not

offend due process if "minimum contacts exist between the defendant and the forum state."

*World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559 (1980).

As set forth above, O'Quinn's contacts with New York go back nearly a decade. (Pollack

Exhibits 8 and 10.) The various contacts between O'Quinn and New York include their hiring of

a public relations firm in New York to promote O'Quinn and "Death Spiral Finance" cases in

New York; appearing pro hac vice in New York cases including a mediation in the United States

District Court for the Southern District of New York; the representation of New York residents

as clients; interaction and oversight of local New York counsel for other New York cases; the

retaining of expert witnesses in New York for testimony and services to be performed in New

York; and meeting in New York with prospective clients. And of course, the present matter in

which O'Quinn formed an agreement with Robinson Brog, a New York law firm, for its

anticipated services. It is not credible to argue that requiring O'Quinn to defend itself in New

York is somehow offensive to substantial justice.

O'Quinn argues unconvincingly that subjecting it to jurisdiction in New York is

unreasonable and burdensome, as the firm is currently winding up its business. One must take

this excuse with a large grain of salt. As the Supreme Court recognized over twenty-five years

ago, "modern transportation and communications have made it much less burdensome for a party

sued to defend himself" in another forum. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474,

105 S. Ct. 2174, 2183 (1985).

O'Quinn also expresses concern over the availability of third-party witnesses, but such

concerns are not relevant to this particular jurisdictional analysis. Nevertheless, Wes Christian

of CS&J who was O'Quinn's co-counsel in the Escala Litigation and other cases, has stated he

will voluntarily appear and produce documents pursuant to a duly issued subpoena, thus greatly alleviating Defendant's concerns.

Try as it might, O'Quinn cannot escape from the fact that New York has an interest in adjudicating this dispute. New York is the "center of gravity" of the agreement at issue in this case and for the reasons stated in Point I(B)(6), *infra*, it is New York law that governs this dispute. Furthermore, Robinson Brog is a New York law firm, the agreement was formed when O'Quinn travelled to New York for the purpose of securing an agreement with Robinson Brog, and Robinson Brog's performance took place in New York. For the foregoing reasons, jurisdiction over O'Quinn in New York is not unreasonable, and does not offend due process.

**B.   A TRANSFER OF VENUE IS INAPPROPRIATE**

O'Quinn argues that even if jurisdiction is proper in New York, which it is, this case should be transferred to the Southern District of Texas pursuant to 28 U.S.C. § 1404(a). Even conceding the threshold question of whether this action could have been commenced in Texas, the factors of a venue-change analysis weigh heavily against a transfer of this action. For the Court's convenience, we will address the factors in the order presented by defendant.[4]

**1.   Convenience and availability of witnesses weighs against transfer**

Witnesses likely to testify in this action, in addition to the parties, are located in both New York and Texas. Expert witnesses Robinson Brog may call to testify about the Escala Litigation are located in New York. Wes Christian of CS&J, who is an attorney admitted to practice in both New York and Texas, but resides in Texas, has agreed to testify in New York. This factor weighs against transfer.

---

[4] Robinson Brog notes that O'Quinn does not argue the change-of-venue factors in the same sequence as articulated by the authority it cites. No inference should be drawn as to the weight of the factors based on the order in which they are presented by O'Quinn.

### 2.   Location of documents and sources of proof is neutral

O'Quinn asserts that relevant documents "for the most part" are located in Texas.  As this is not a document intensive case requiring the conveyance of voluminous documents and exhibits, this factor should not be accorded much weight.  In any event, Robinson Brog's relevant documents evidencing its years of work on the Escala Litigation are in New York. Moreover, Wes Christian of CS&J has agreed to provide his firm's documents in New York pursuant to a subpoena.

### 3.   Convenience of the parties weighs against transfer

O'Quinn argues that transfer would not entail "significant expenses or delays", implicitly acknowledging some level of expense and delay will be occasioned, yet still somehow concludes that this factor weighs in favor of transfer.  Transfer would impose additional expenses and delay, and further, Robinson Brog is an active law firm with a full case load, whereas O'Quinn is winding up its business as a result of the death of John O'Quinn in an automobile accident.  The time involved in travelling  to Texas to prosecute this action would be burdensome to Robinson Brog, and therefore this factor weighs heavily against transfer.

### 4.   Relative means of the parties weighs against transfer

Defendant claims the means of the parties is roughly equal, but given the annuity O'Quinn receives from its participation in the tobacco settlement alone, and the collection of other fees owed to the firm, without any corresponding overhead costs, it appears they are in a stronger financial position than plaintiff.  (Christian Dep. at 26.)  This factor weighs against transfer.

### 5. <u>Locus of operative facts is New York</u>

O'Quinn makes the absurd argument that the locus of operative facts "points squarely at Texas" because that is where O'Quinn made certain "decisions", including the decision to commence the Escala Litigation, the decision to abandon its obligation to fund the Escala Litigation, and the decision not to compensate Robinson Brog for its services and expenses on the Escala Litigation. To the extent these "decisions" require rebuttal, the agreement upon which Robinson Brog bases its claims originated in New York, was negotiated between the parties in New York, and was substantially performed by Robinson Brog in New York. Despite O'Quinn's assertions, New York law, not Texas law, governs its agreement with Robinson Brog. *See* Point I(B)(6), *infra*. The locus of operative facts is in New York and therefore this factor weighs heavily against transfer.

### 6. <u>New York Courts are more familiar with the operative law</u>

O'Quinn has used both convoluted and illogical reasoning to reach the conclusion that Texas law applies to its agreement with Robinson Brog. O'Quinn starts with the premise that because the Joint Responsibility Agreement references the Texas Rules of Professional Conduct, Robinson Brog is thereby bound by those rules despite not having any attorney in the firm admitted to practice law in Texas, and never agreeing to be so bound by these rules. O'Quinn then recites that the Texas Rules mandate that a client agree to a division of fees in a contingency case, and concludes that the Client Agreement (which does contain a Texas choice-of-law provision) is somehow incorporated into the Joint Responsibility Agreement between O'Quinn, CS&J, and Robinson Brog.

This reasoning is patently flawed. The Consent to Refer agreement, among Escala Group Shareholder Client(s), O'Quinn, CS&J and Robinson Brog (the "Consent to Refer"), signifies the

clients' consent to the division of fees and satisfied the Texas Rules.  (Pollack Exhibit 2.)[5]

However, the Consent to Refer does <u>not</u> contain a choice-of-law provision.  (*Id.*)  Moreover,

while Robinson Brog did sign the Joint Responsibility Agreement and the Consent to Refer, it

did <u>not</u> sign and was <u>not</u> party to the Client Agreement between O'Quinn, CS&J and the clients.

Robinson Brog's claims arise under the Joint Responsibility Agreement it executed with

O'Quinn, not the Client Agreement O'Quinn executed with the clients.  Nor does the Amended

Complaint rely on, or cite to any provision of, the Client Agreement.  As such, O'Quinn's

reliance on the Client Agreement for its choice-of-law provision is misplaced.

A federal court sitting in a diversity case must apply the choice-of-law rules of the forum

state, in this case New York. *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531,

1538 (2d Cir. 1997).  In the event that a contract contains no choice-of-law provision, New York

courts apply a "center of gravity" approach, and may consider a spectrum of significant contacts,

including the i) place of contracting, ii) the places of negotiation and performance, iii) the

location of the subject matter of the contract, and iv) the domicile or place of business of the

contracting parties. *Id.* at 1539 (citing *Brink's Ltd. v. S. African Airways*, 93 F.3d 1022 (2d Cir.

1996)). The traditional choice of law factors, the places of contracting and performance, are

given the heaviest weight in this analysis. *Id.*

### a.  <u>Place of Contracting</u>

An agreement was reached at the June 2007 meeting in New York at the offices of

Robinson Brog, which the parties signified by shaking hands. (Christian Dep. at 26-27.)  Thus

the contract was formed in New York.

---

[5] Defendant makes mention of the Consent to Refer three times in its Subject Matter Jurisdiction Memorandum (Defendant's SMJ Mem. at 1, 7 and 11) but does not annex the document to its papers.

### b. Place of Negotiation and Performance

The negotiation and essential terms of the agreement between O'Quinn and Robinson Brog were set at their in-person meeting in New York, to which the Texas parties travelled for the meeting. The services of Robinson Brog, for which it now seeks compensation, were performed substantially in New York over a period of years. While the ultimate litigation was envisioned as being brought in Georgia, neither party here is asserting Georgia law as controlling, thus this factor indicates New York law should be controlling.

### c. Subject Matter of the Agreement

The legal work performed by Robinson Brog was contemplated by the parties at the time of contracting as being done in New York, with the eventual goal of litigating in Georgia. As Texas is entirely absent from this calculus, New York law should govern.

### d. Domicile/Place of Business of the Parties

The parties' places of business are New York and Texas, thus this factor is neutral.

As the location of contracting and performance are granted the most influence in this determination, New York is clearly the "center of gravity", making its law controlling. Of course, this Court will be more familiar with governing New York law than the Southern District of Texas, militating strongly against a transfer of venue.

### 7. Plaintiff's Choice of Forum Should be Afforded Substantial Weight

"A court should <u>not</u> disturb a plaintiff's choice of forum unless the moving party makes a clear and convincing showing that the balance of convenience favors [the movant's] choice." *Milberg Factor, Inc. v. Atl. Wholesale, Inc.,* 99 CIV. 1218 DLC, 1999 WL 1000922 (S.D.N.Y. Nov. 4, 1999) (emphasis added). O'Quinn has made no such showing, therefore Robinson Brog's choice of New York as the operative forum should not be disturbed.

**8.   The Interests of Justice Will Not Be Served by a Transfer of Venue**

In determining whether or not to change venue, congestion is "not a factor entitled to decisive weight in this district." *DCA Food Indus. Inc. v. Hawthorn Mellody, Inc.,* 470 F. Supp. 574, 586 (S.D.N.Y. 1979). Defendant cites to the difference in "time to trial" between the two districts, however a wait time of 2.5 years instead of 2 years is not particularly noteworthy, and this factor should not be accorded much weight given the preponderance of the other factors above weighing against transfer.

Because of the foregoing reasons, this Court should exercise its discretionary authority to maintain an action in the Southern District of New York and deny O'Quinn's motion for a transfer of this action to Texas.

## II.   DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION SHOULD BE DENIED IN ITS ENTIRETY

The notion that this Court lacks subject matter jurisdiction over this action because O'Quinn agreed to arbitrate in Texas any disputes with its clients, arising out of a separate agreement, to which Robinson Brog is <u>not</u> a party, and on which Robinson Brog does <u>not</u> rely, strains the limits of credulity.

Robinson Brog alleges in its Amended Complaint, that it entered into an agreement with O'Quinn and CS&J in New York, whereby O'Quinn agreed to fund the Escala Litigation and pay all expenses (including those of Robinson Brog and CS&J), in exchange for which Robinson Brog agreed to jointly prosecute the Escala Litigation with O'Quinn and CS&J. Amended Complaint, ¶ 1, 15-21. Robinson Brog further alleges that the terms of the parties' verbal agreement were later memorialized in the written Joint Responsibility Agreement. Amended Complaint, ¶ 22. Conspicuously absent from the Joint Responsibility Agreement is an arbitration provision of any kind. (Pollack Exhibit 1.) Nonetheless, in an attempt to litigate its

wrongdoing in its own backyard of Harris County, Texas, O'Quinn asserts that a separate Client Agreement between it and certain Escala shareholders which contained an arbitration clause, also makes Robinson Brog's claims subject to arbitration in Harris County, Texas, despite the obvious fact that Robinson Brog is not a party to the Client Agreement, and never agreed to arbitrate its claims arising out of its relationship with O'Quinn. (Bennett SMJ Declaration, Exhibit 2.) Undeterred, O'Quinn attempts to shoehorn this action into the Client Agreement's arbitration clause, and would have this Court force Robinson Brog to arbitrate its claims in Texas, by making the untenable arguments that Robinson Brog "relies" on the Client Agreement in asserting its claims and that the Joint Responsibility Agreement should be read together with the Client Agreement which is between different parties and was intended to accomplish a different purpose. Close scrutiny of the Amended Complaint and the Joint Responsibility Agreement yield no mention of the Client Agreement. Moreover, Robinson Brog's allegations do not arise from O'Quinn's separate representation agreement with certain Escala shareholders, but instead arise from O'Quinn's agreement directly with Robinson Brog to fund the Escala litigation, pursuant to which Robinson Brog expended significant time, effort, money and other resources with O'Quinn's knowledge, consent and encouragement. By its motion pursuant to FRCP 12(b)(1), O'Quinn now seeks another path to walk away from its obligations, without any consequence.

## A.   UNDER APPLICABLE LAW, THERE IS NO BASIS TO FORCE ROBINSON BROG TO ARBITRATE ITS CLAIMS AGAINST O'QUINN

### 1.   Robinson Brog is Not a Signatory to Any Arbitration Agreement with O'Quinn

Robinson Brog may not be compelled to arbitrate its claims against O'Quinn in Harris County, Texas, or even in New York, because it never agreed to do so.

"When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985 (1995) (citations omitted).  For the reasons set forth in Point I(b)(6), *supra*, New York law governs.[6]

> Under New York law:
>
> It is settled that a party will not be compelled to arbitrate and, thereby, to surrender the right to resort to the courts, absent "evidence which affirmatively establishes that the parties expressly agreed to arbitrate their disputes." (*Schubtex, Inc. v. Allen Snyder, Inc.*, 49 N.Y.2d 1, 6, 424 N.Y.S.2d 133, 399 N.E.2d 1154; see, also, *Matter of Marlene Inds. Corp.* [*Carnac Textiles* ], 45 N.Y.2d 327, 333–334, 408 N.Y.S.2d 410, 380 N.E.2d 239.)  The agreement must be clear, explicit and unequivocal (*Matter of Acting Supt. of Schools* [*United Liverpool Faculty Ass'n* ], 42 N.Y.2d 509, 512, 399 N.Y.S.2d 189, 369 N.E.2d 746; *Matter of Lehman v. Ostrovsky*, 264 N.Y. 130, 132, 190 N.E. 208) and must not depend upon implication or subtlety (*Matter of Riverdale Fabrics Corp.* [*Tillinghast-Stiles Co.*], 306 N.Y. 288, 291, 118 N.E.2d 104; *Matter of Doughboy Inds.* [*Pantasote Co.*], 17 A.D.2d 216, 220, 233 N.Y.S.2d 488 [Breitel, J.] ).

*Waldron v. Goddess*, 61 N.Y.2d 181, 183-84, 461 N.E.2d 273, 274 (1984).  O'Quinn does not, and cannot, meet this standard as it is undisputed that Robinson Brog is not a party to the Client Agreement.  Therefore, there exists no "clear, explicit and unequivocal" agreement between Robinson Brog and O'Quinn to arbitrate disputes; indeed, as set forth above, O'Quinn's entire argument that its Client Agreement somehow applies to Robinson Brog is based on "implication or subtlety."  Accordingly, O'Quinn's 12(b)(1) motion to dismiss must be denied.

---

[6] O'Quinn erroneously asserts that Texas law governs the "question" of whether Robinson Brog agreed to arbitrate because the <u>Client Agreement</u>, to which Robinson Brog is <u>not</u> a party, contains a Texas choice of law provision. O'Quinn's argument is misplaced because it ignores the fundamental principle that a non-party is not bound by a contract's terms.

{00564398.DOC;1 }

## 2.  The Limited Circumstances that Sometimes Bind a Non-signatory to an Arbitration Agreement are Not Present Here

The law of this Circuit is entirely consistent with a denial of O'Quinn's 12(b)(1) motion:

> Arbitration is contractual by nature–"a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353 (1960).  Thus, while there is a strong and "liberal federal policy favoring arbitration agreements," *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 625, 105 S.Ct. 3346, 3353 (1985) (quotations omitted), such agreements must not be so broadly construed as to encompass claims and parties that were not intended by the original contract."

*Thomson-CSF, S.A. v. Am. Arbitration Ass'n,* 64 F.3d 773, 776 (2d Cir. 1995) (emphasis added).

While it is undisputed that Robinson Brog is not a party to the Client Agreement, the Second

Circuit recognizes five possible theories for binding non-signatories to arbitration agreements:

1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5)

estoppel.  *Id.* at 776-780.  In articulating these theories and reversing Judge Keenan's decision in

*Thomson-CSF* to compel arbitration, the Second Circuit expressly rejected extending the law in

this area because doing so would dilute the protections afforded non-signatories by ordinary

principles of contract and agency.  *Id.* at 780.

As in *Thomson-CSF*, each of the five potential theories for binding a non-signatory to an

arbitration agreement is an insufficient justification for binding Robinson Brog to the arbitration

agreement in O'Quinn's separate agreement with certain Escala shareholders.  Of the five

possible grounds, Defendant tries its hand at estoppel.[7]  (Defendant's SMJ Mem. at 7-8; 11-12.)

Defendant attempts to advance an estoppel theory by making the disingenuous claim that

Robinson Brog is somehow "knowingly exploit[ing] the agreement containing the arbitration

---

[7]  O'Quinn does not argue that the remaining four theories – incorporation by reference; assumption; agency; and veil-piercing/alter ego – are applicable and, for that reason, they are not addressed herein.  In any case, no matter what the theory, the Amended Complaint offers no grounds that would justify binding Robinson Brog to an arbitration agreement to which it is not a party.

clause." *Id.* at 11.  In limited circumstances, not present here, it is possible for a party to be estopped from avoiding arbitration where such party has knowingly exploited an agreement and accepted its benefits. *See, e.g., Thomson-CSF,* 64 F.3d at 778.  As stated above, however, nowhere in its Amended Complaint does Robinson Brog even mention the Client Agreement, much less rely on it in asserting its claims.  It is apparent from even the most liberal reading of Robinson Brog's Amended Complaint that its claims do not encompass a dispute with the Escala shareholders, which is the subject matter of the Client Agreement to which Robinson Brog is not a party.  Indeed, in order for the estoppel theory to be applicable here, Robinson Brog would need to have derived some <u>direct</u> benefit from the Client Agreement.  *See MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC,* 268 F.3d 58, 61-62 (2d Cir. 2001) ("The benefits must be direct-which is to say, flowing directly from the agreement"; the proponent of arbitration must show that the non-signatory "knowingly exploited the agreement "and thereby received a direct benefit from the [agreement]"); *Thomson-CSF,* 64 F.3d at 778-79 (to be estopped from avoiding arbitration, Thomson would have had to take some action directly under the agreement containing the arbitration clause or directly seek to enforce the provisions of that agreement); *Oppenheimer & Co. Inc. v. Deutsche Bank AG,* 09 CIV. 8154(LAP), 2010 WL 743915 (S.D.N.Y. Mar. 2, 2010) ("The mere fact of a nonsignatority's [sic] affiliation with a signatory will not suffice to estop the nonsignatory from avoiding arbitration, no matter how close the affiliation is").  "By contrast, the benefit derived from an agreement is indirect where the nonsignatory exploits the contractual relation of parties to an agreement, but does not exploit (and thereby assume) the agreement itself." *MAG Portfolio Consultant,* 268 F.3d at 61 (citation omitted).

The Amended Complaint seeks relief arising from O'Quinn's breach of its June, 2007 agreement with Robinson Brog which was later memorialized in the Joint Responsibility Agreement. Robinson Brog did not exploit or benefit from the Client Agreement, and could maintain a cause of action against O'Quinn even if the Client Agreement never existed. Indeed, Robinson Brog has not sought to enforce any aspect of the Client Agreement or cite any of its provisions in the Amended Complaint. Because Robinson Brog is not a signatory to the Client Agreement, which was between O'Quinn and its clients, and had no involvement in the execution or performance of the agreement, Robinson Brog did not receive any direct benefits from the Client Agreement, the Court should not dismiss this case. *Phoenix Companies, Inc. v. Abrahamsen,* No. 05 Civ. 4894(WHP), 2006 WL 2847812, at *7 (S.D.N.Y. Sept. 28, 2006). To the extent O'Quinn improperly argues for the first time on Reply that it would not be able to perform under the Joint Responsibility Agreement without the Client Agreement being in place, (i) such an argument is incorrect because, at best, the Consent to Refer accomplishes that goal without involving the Client Agreement; and (ii) any benefit Robinson Brog derives from the Client Agreement is clearly indirect. *See Masefield AG v. Colonial Oil Indus., Inc.,* 05 CIV. 2231 (PKL), 2005 WL 911770 (S.D.N.Y. Apr. 18, 2005) (finding non-signatory not bound to arbitration despite directly receiving proceeds pursuant to sales contract signed by affiliate). An indirect benefit would <u>not</u> estop Robinson Brog's avoidance of the Client Agreement's arbitration clause. *Id.; see also MAG Portfolio Consultant, supra,* 268 F.3d at 61-62; *Thomson-CSF, supra,* 64 F.3d at 778-79; *Oppenheimer, supra,* 2010 WL 743915, at *3.

In a futile attempt to bridge the divide between its desires and reality, O'Quinn also argues that the Court should enforce its arbitration agreement with its clients against Robinson Brog, because the Joint Responsibility Agreement, the Client Agreement and the Consent to

Refer should, all be read together as one document. (Defendant's SMJ Mem. At 7-8; 11-12.) O'Quinn's "bridge" falls under its own weight. It ignores both the exploitation and direct benefit requirements of the estoppel theory as well as the allegations in the Amended Complaint and the plain text of the documents themselves.

Defendant's cite to *Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc.,* 269 F. Supp. 2d 356 (S.D.N.Y. 2003) does nothing to bolster its fragile attempt to string together separate agreements between different parties, at different times, concerning different matters. The *Sea Spray* court held that a promissory note <u>issued pursuant to</u> a loan agreement, and the loan agreement itself, comprised a single contract where (i) the promissory note was attached as an exhibit to the loan agreement, (ii) the loan agreement specifically referenced the promissory note, (iii) the promissory note specifically referenced the loan agreement, (iv) both documents were executed contemporaneously, (v) by the same parties, and, obviously, (vi) addressed the same subject matter – a loan. *Sea Spray,* 269 F. Supp. 2d at 357-60. Moreover, the *Sea Spray* Court only enforced the loan agreement's arbitration provision against the non-signatory assignee of the promissory note because, as an <u>assignee,</u> the noteholder was not entitled to any greater rights than the assignor/original noteholder who took the note pursuant to the loan agreement. *Id.* at 361-62. Tellingly, the *Sea Spray* Court refrained from enforcing the arbitration clause against Pali, an apparent intermediary purchaser, who was not a party to the loan agreement containing the arbitration provision. *Id.* at 365.

To state the vast differences between *Sea Spray* and the case at bar is to state the obvious. As such, O'Quinn can find no footing there.[8] The Joint Responsibility Agreement and the Client Agreement are not attached to one another and do not even reference one another. The

---

[8] In a recent opinion, Judge Swain rejected a defendant's attempt to "advance[ such an] estoppel argument," finding that "intertwined" matters did not rise to the basis for the *Sea Spray* holding. *Bank of Am. Nat. Ass'n v. Sopher,* 10 CIV. 8870 LTSKNF, 2011 WL 2419872 (S.D.N.Y. June 8, 2011).

agreements were not executed contemporaneously, each has different signatories, and each concerns different subject matter. The Joint Responsibility Agreement is the October, 2007 written memorialization of an existing economic agreement between O'Quinn, CS&J and Robinson Brog regarding funding, expenses, joint responsibilities and attorneys' fees and their allocation in the event of a recovery. The Client Agreement governs the attorney-client relationship between O'Quinn and CS&J on the one hand, and certain Escala shareholders on the other, and is dated August 9, 2007. Robinson Brog is not a party to the Client Agreement.

In the alternative and, at best, the Joint Responsibility Agreement and the Consent to Refer relate to the same subject matter. The Consent to Refer is an agreement among the Escala shareholders, O'Quinn, CS&J and Robinson Brog that, like the Joint Responsibility Agreement, is dated in October, 2007. The Consent to Refer details the Escala client's agreement to the payment of attorneys' fees, the allocation of attorneys' fees, the joint responsibilities of the attorneys and the reimbursement of expenses of the litigation. To the extent the Joint Responsibility needs a companion to satisfy Texas Disciplinary Rule of Professional Conduct 1.04, as Defendant argues, it has and it in the Consent to Refer, not the Client Agreement. In fact, the Joint Responsibility Agreement specifically states: "The Clients will be informed of our respective roles regarding this matter, and will execute and sign a separate Consent to Refer Agreement indicating their approval of and acceptance of same." (Pollack Exhibit 1, ¶ 5) (emphasis added.) O'Quinn has apparently "overlooked" these details. Perhaps that is because the Consent to Refer does not contain an arbitration provision.

In the further alternative, if O'Quinn somehow persuades the Court that the Client Agreement should be read together with the Joint Responsibility Agreement, it does not follow that the Client Agreement's arbitration clause governs this dispute.

> "The mere fact that a document is an "integral part" of a larger transaction does not mean that any provision contained in that document must be applied to all other documents that are part of the same transaction. Nor is it dispositive that the contractual documents were all executed at the same time. Parties are free to enter into multiple contracts as part of a single transaction without the provisions in one contract governing another contract."

*Rosen v. Mega Bloks Inc.*, 06 CIV 3474 LTS GWG, 2007 WL 1958968 (S.D.N.Y. July 6, 2007)

*report and recommendation adopted in part,* 06CIV.3474(LTS)(GWG), 2008 WL 2810208

(S.D.N.Y. July 21, 2008) (rejecting argument that arbitration clause in one document applied to

all agreements even where such agreements were found to form part of the same transaction).

Even if there were sufficient justification for binding Robinson Brog to the arbitration

provision in the Client Agreement, the instant dispute is outside the scope of that arbitration

provision.  Just as "the FAA does not require parties to arbitrate when they have not agreed to do

so, . . . it [does not] prevent parties who do agree to arbitrate from excluding certain claims from

the scope of their arbitration agreement."  *Volt Info. Sciences v. Board of Trustees of Leland*

*Stanford Jr. Univ.,* 489 U.S. 468, 478, 109 S.Ct. 1248, 1255 (1989).

> Where the scope of an arbitration agreement is broad, there arises a presumption of arbitrability; if, however, the dispute is in respect of a matter that, on its face, is clearly <u>collateral to the contract</u>, then a court should test the presumption by reviewing the allegations underlying the dispute and by asking whether the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.... <u>[C]laims that present no question involving construction of the contract, and no questions in respect of the parties' rights and obligations under it, are beyond the scope of the arbitration agreement.</u>

*Specht v. Netscape Communications Corp.,* 306 F.3d 17, 35-36 (2d Cir. 2002) (emphasis added)

(internal citations omitted).

On its face, the Client Agreement's arbitration clause read alone and in conjunction with

the remainder of that agreement illustrates that it applies to disputes between the "Client" and the

"Attorneys".  Clearly, the subject matter of the Client Agreement is the relationship between the

"Client" and the "Attorneys."  It simply does not contemplate a dispute among the "Attorneys"

{00564398.DOC;1 }

26

themselves.  Moreover, the Client Agreement specifically defines "Attorneys" as O'Quinn and

CS&J.  Robinson Brog is not only excluded from the definition, it is not mentioned anywhere in

the document.

By reason of the foregoing, as the claims in this matter are not arbitrable, neither a stay

nor dismissal of the action is appropriate, and the Court should deny Defendant's 12(b)(1)

motion.

## III.   DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM SHOULD BE DENIED

Robinson-Brog has alleged the following seven Counts seeking an award of damages,

costs, and expenses:  Count I for breach of contract; Count II for promissory estoppel; Count III

for quantum meruit; Count IV for unjust enrichment; Count V for breach of implied contract;

Count VI for negligent misrepresentation; and Count VII for equitable estoppel.  It is well settled

that a complaint must contain a "short and plain statement of the claim showing that the pleader

is entitled to relief." FRCP 8(a)(2).  A claim will be dismissed if it fails to state a claim upon

which relief can be granted.  FRCP 12(b)(6).  "[D]etailed factual allegations" are not required,

however, the allegations in the complaint, accepted as true, must establish a claim "plausible on

its face." *Bell Atlantic Corp. et al. v. Twombly et al.*, 550 U.S. 544, 570 (2007). The

"plausibility" standard requires the complaint to present enough factual content to allow "the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  A complaint may proceed even if

it appears "that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (quoting

*Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974)).

The Second Circuit in applying *Twombly* has held that:

> The purpose of Rule 12(b) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief <u>without</u> resolving a contest regarding its substantive merits.  The Rule thus assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it.

*Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006).

Under the Second Circuit's interpretation of *Twombly*, a district court is required to identify the pleaded facts, assume them to be true, draw all reasonable inferences from those well pleaded facts in plaintiff's favor, and then determine whether the complaint states a claim for relief that is plausible on its face. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Civ 2010) citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009) (emphasis original.)

In adjudicating a motion to dismiss based on FRCP 12(b)(6), a court may consider only the complaint, written instruments attached to the complaint as exhibits, statements or documents incorporated by reference in the complaint, and documents on which the complaint heavily relies. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir.2002).  O'Quinn disregards this well-settled maxim and improperly cites to the deposition of Wes Christian, (which it attaches as Exhibit 2 to the Bennett 12(b)(6) Declaration), the Steed Affidavit and the Client Agreement.  The use of these documents and O'Quinn's other improper attempts to manufacture factual questions, and offer opinions and speculation[9] in support of its misguided motion, should not be countenanced on a 12(b)(6) motion.  Such references and statements are inadmissible at this juncture of this litigation and must be ignored. *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (if matters outside the pleadings are presented in a 12(b)(6) motion, a court must disregard the additional material and decide the motion on the complaint

---

[9] For example, O'Quinn improperly speculates regarding invoices for Robinson Brog's services and expenses and a discussion concerning Robinson Brog's hourly billing rates.  O'Quinn even gratuitously offers  its unsupported opinions on the merits of stock fraud cases.

alone or convert the motion to one for summary judgment and afford all parties the opportunity

to present supporting material).  A FRCP 12 (b)(6) motion is not the time for Defendant to

address the merits of the case.

The Second Circuit has provided clear guidance to district courts in reviewing motions to

dismiss under FRCP 12 (b)(6):

> The review of [a 12 (b)(6)] motion is limited, and the issue is not whether a
> plaintiff will ultimately prevail but whether the claimant is entitled to offer
> evidence to support the claims.  Recovery may appear remote and unlikely on the
> face of the pleading, but that is not the test for dismissal.  (Emphasis added)

*Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996) (internal quotations or citations omitted).

The issue raised by Defendant's 12(b)(6) motion is simply whether the Amended

Complaint is sufficiently pleaded and plausible on its face.  Robinson Brog respectfully submits

that it is.

### A.   ROBINSON BROG'S AMENDED COMPLAINT MEETS THE PLEADING STANDARD

Robinson Brog alleges sufficient facts in its Amended Complaint to plausibly support its

damage theories.  The Amended Complaint alleges that Robinson Brog and O'Quinn were

parties to an agreement, later memorialized by the Joint Responsibility Agreement, pursuant to

which Robinson Brog would share in the net recovery according to specified percentages and be

reimbursed by O'Quinn for all expenses incurred during the course of the litigation.  (Amended

Complaint, ¶ 1, 19-22.)  O'Quinn's unilateral breach of its obligations violated its agreement

with Robinson Brog, and prevented an eventual recovery in the Escala Litigation.   (Amended

Complaint, ¶ 39.)

O'Quinn asserts that Robinson Brog did not allege facts establishing that its legal

services and expenses are owed by Defendant.  While O'Quinn addresses the alleged damages in

Robinson Brog's claim for breach of contract, it conspicuously fails to address plaintiff's six additional claims.  Instead, O'Quinn focuses on litigating what the Joint Responsibility Agreement contemplates as "reasonable and customary expenses."  However, this argument is misplaced because Robinson Brog has alleged that it incurred expenses (Amended Complaint, ¶ 1, 26, 44, 49, 74.) and that it is entitled to those expenses pursuant to its agreement with O'Quinn which was later memorialized in the Joint Responsibility Agreement (Amended Complaint, ¶ 19, 22.)[10]  Moreover, the issue of what expenses are "reasonable and customary" is a question of fact and not proper fodder for a motion to dismiss.

In any event, Robinson Brog's damages encompass far more than payment for "reasonable and customary" expenses.  While Robinson Brog alleges it is owed its expenses and costs incurred in connection with the Escala Litigation based on its agreement with O'Quinn, Robinson Brog is also seeking the value of attorney time spent developing and working on the case, which O'Quinn, by agreement and through representations and conduct, promised to fund. (Amended Complaint, ¶ 1, 19, 25.)  The value of Robinson Brog's legal services flow from reliance on O'Quinn's representations.  O'Quinn's inexcusable withdrawal left Robinson Brog unable to continue prosecution of the Escala Litigation, and thus unable to recover its costs for its services and expenses.

O'Quinn is also liable for having denied Plaintiff the opportunity to obtain its share of a recovery in the Escala Litigation.  The law awards damages for breach of contract to make whole the injured party's interest in "the benefit of his bargain."  Williston on Contracts § 64:2 (4th ed. 2000).  Recoverable damages include expectation damages, which are ordered to put the injured

---

[10] Defendant argues that because the "magic" words "reasonable and customary" do not precede the words "expense" every time that word is used in the Amended Complaint, Robinson Brog's Amended Complaint is deficient.  To the extent Defendant's argument has any merit, Robinson Brog respectfully requests that the Court grant it leave to amend.

party, "in as good a position as he would have been in, had the contract been performed," and anticipated profits are part of the equation. *Dorchester Pub. Co. v. Lanier*, 01 CIV. 8792 (DAB), 2006 WL 4388035 (S.D.N.Y. Mar. 19, 2006) (quotations omitted). By failing to continue to fund the litigation, O'Quinn rendered impossible the successful resolution of the Escala Litigation, which deprived Robinson Brog of the opportunity for recovery. Expectation damages are warranted to restore Robinson Brog to the position it would have been in, had O'Quinn satisfied its obligation to continue to fund the Escala Litigation.

### B.   ROBINSON BROG'S DAMAGES ARE NOT SPECULATIVE AND SURVIVE A MOTION TO DISMISS

O'Quinn argues that Robinson Brog's claim for expectancy damages is too speculative, and that because "contingency cases by their very nature are a gamble," Robinson Brog has no grounds to seek damages beyond its losses for its time and expenses. However, Robinson Brog did not commence the instant action against O'Quinn because it ultimately failed to recover due to an adverse verdict following a trial. Rather, it was never able to reach that point, and its losses and missed opportunities are directly attributable to O'Quinn's unlawful breach and inexcusable failure to comply with its written agreement to fund the action. O'Quinn cannot reasonably maintain an argument that Plaintiff's damages are too speculative, because it is O'Quinn's own wrongdoing that caused those damages. "[S]ince it is defendant's alleged wrong which has rendered it impossible for plaintiff to prove his damages with certainty, defendant cannot complain of the alleged uncertainty that will play a part in the calculation of damages." *Spitz v. Lesser*, 302 N.Y. 490, 494, 99 N.E.2d 540, 542 (1951). This is especially true in the context of a motion to dismiss:

> [W]here defendant is alleged to have interfered with and prevented plaintiff's performance, we are reluctant to dismiss plaintiff's claim on the ground that determining the degree of success that his performance would have achieved is

> speculative. We agree that, in order to prove that plaintiff would have secured these agreements and thus earned the bonuses, some inferences may have to be drawn. However, on a motion to dismiss, a court should read the complaint generously, and should <u>not</u> dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief

*Tagare v. NYNEX Network Sys. Co.,* 921 F. Supp. 1146, 1150-51 (S.D.N.Y. 1996) (internal quotations omitted) (emphasis added).  Here, Robinson Brog must be afforded the full opportunity to show that O'Quinn's termination of the funding prevented CS&J and Robinson Brog from continuing to prosecute the Escala Litigation, which otherwise would have resulted in a recovery.

## CONCLUSION

For the foregoing reasons, each of O'Quinn's Motions to Dismiss should be denied in their entirety.  In the alternative, Robinson Brog respectfully requests leave to amend.

Dated:   New York, New York
         February 17, 2012

                          ROBINSON BROG LEINWAND GREENE
                          GENOVESE & GLUCK P.C.


                   By:        s/ Thomas Filardo
                          Alan M. Pollack
                          Thomas Filardo
                          ROBINSON BROG LEINWAND
                          GREENE GENOVESE & GLUCK P.C.
                          875 Third Avenue
                          New York, New York  10022
                          Telephone:  (212) 603-6300
                          Fax:  (212) 956-2164
                          *Attorneys for Plaintiff*