UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK P.C., <br> Plaintiff, <br> v. <br><br> JOHN M. O'QUINN & ASSOCIATES, L.L.C. d/b/a THE O'QUINN LAW FIRM, <br> Defendant. | § § § § § § § § § § | Civil Action No. 1:11-cv-02730 (LLS) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JOHN M. O'QUINN & ASSOCIATES, L.L.C.'S MOTIONS TO DISMISS FOR:**

1) FOR FAILURE TO STATE A CLAIM;
2) FOR LACK OF PERSONAL JURISDICTION OR IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE; AND
3) TO STAY OR DISMISS PROCEEDINGS PENDING ARBITRATION

MC FALL, BREITBEIL & SMITH, P.C.
1331 Lamar Street
1250 Four Houston Center
Houston, Texas 77010
(713) 590-9300

MANDEL BHANDARI LLP
11 Broadway, Suite 615
New York, New York 10004
(212) 269-5600

Attorneys for Defendant
John M. O'Quinn & Associates, P.L.L.C.
d/b/a The O'Quinn Law Firm

**TABLE OF CONTENTS**

**INTRODUCTION** ................................................................................................................... 1

**ARGUMENT** .......................................................................................................................... 3

    A.  THIS COURT CANNOT ASSERT SPECIFIC OR GENERAL JURISDICTION OVER THE O'QUINN FIRM. ..................................................................................................... 3

        1. THERE IS NO SPECIFIC JURISDICTION OVER THE O'QUINN FIRM. ......................... 3

        2. GENERAL JURISDICTION DOES NOT EXIST OVER THE O'QUINN FIRM. ................ 5

    B.  A TRANSFER OF VENUE IS WARRANTED .................................................................. 6

    C.  THE COURT SHOULD STAY THIS CASE PURSUANT TO ARBITRATION .......................... 7

    D.  ROBINSON BROG FAILS TO STATE A CLAIM. ............................................................ 10

**CONCLUSION** ...................................................................................................................... 11

# **TABLE OF AUTHORITIES**

**CASES**

*Bastille Properties, Inc. v. Hometels of Am., Inc.*, 476 F.Supp. 175, 176-77 (S.D.N.Y. 1979)...... 3
*George Reiner & Co., Inc. v. Schwartz*, 41 N.Y.2d 648, 653, 363 N.E.2d 551, 551-552 (1977) .. 3
*Thomson–CSF, S.A v. Am. Arbitration Ass'n,* 64 F.3d 773, 778 (2d Cir.1995) .............................. 9

**STATUTES**

N.Y. C.P.L.R. §301 ........................................................................................................................ 5

**RULES**

CODE OF PROF'L RESPONSIBILITY DR 2-106 [D] [22 NYCRR 1200.11 (D)] ................................ 4
TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04 ............................................................................ 4, 8

Defendant John M. O'Quinn & Associates, L.L.C. d/b/a The O'Quinn Law Firm ("O'Quinn Firm") files this reply to Plaintiff Robinson Brog Leinwand Greene Genovese & Gluck P.C.'s ("Robinson Brog") Memorandum of Law in Opposition to Defendant John M. O'Quinn & Associates LLP's Motions to Dismiss ("Response"): 1) for Lack Of Personal Jurisdiction Or In The Alternative, Motion To Transfer Venue; 2) to Stay or Dismiss Proceedings Pending Arbitration; and 3) for Failure to State a Claim ("Motions to Dismiss").

## I.
## INTRODUCTION AND SUMMARY OF REPLY

Robinson Brog's claims should either be dismissed or stayed pursuant to arbitration. Incredibly, Robinson Brog brings this lawsuit for millions in expectation damages and several hundreds of thousands of dollars in time and expenses even though the agreement upon which these alleged damages are based, the Joint Responsibility Referral Fee Letter Agreement ("the Joint Referral Agreement"), does not even provide for reimbursement of time. Further, Robinson Brog's alleged damages are very speculative given that the stock fraud case was ***never filed*** ("possible Escala litigation").

In addition to opposing the O'Quinn Firm's motions to dismiss for lack of jurisdiction and failure to state a claim, Robinson Brog seeks to avoid arbitration by asserting it does not directly benefit from the Power of Attorney and Contingent Fee Contract ("the Client Agreement"), which contains an arbitration clause that requires all disputes relating to services provided to the clients be heard in arbitration. However, in its Amended Complaint, Robinson Brog alleges that it is entitled to expectation damages (*i.e.,* what Robinson Brog allegedly would have gained if the possible Escala litigation had in fact concluded with a recovery) of at least $12 million dollars, which are akin to the attorneys' fees described in the Client Agreement. Hence, any valuation of expectation damages must necessarily be based on the Client Agreement, and

1

Robinson Brog cannot escape its terms. Because Robinson Brog directly benefits from the Client Agreement, it then follows that Robinson Brog must be subject to the burdens of the Client Agreement, and one of those "burdens" is that Robinson Brog must have its claims heard in arbitration.

Furthermore, in addition to the reasons previously stated in its motions to dismiss, the O'Quinn Firm's motions should be granted for the following reasons:

- **This Court lacks personal jurisdiction over the O'Quinn Firm:** The Court does not have specific personal jurisdiction over the O'Quinn Firm because the Joint Referral Agreement was not substantially negotiated during the July 2007 meeting. As such, there is no specific jurisdiction. As for general jurisdiction, the events Robinson Brog cites to are simply too tenuous and too few in number for general jurisdiction to apply. Therefore, the Court lacks jurisdiction.

- **In the Alternative, the Court should transfer venue to the Southern District of Texas:** The decision to withdraw from the possible Escala litigation was made in Houston. Furthermore, the O'Quinn Firm is part of the estate of John M. O'Quinn and law suits relating to the estate are being adjudicated in a Houston, Texas probate court. Any possible recovery by Robinson Brog in this matter would affect John M. O'Quinn's estate. Thus, because the locus of operative facts related to both the decision to withdraw and any possible recovery by Robinson Brog is in Houston, transfer to the Southern District of Texas is warranted.

- **The Amended Complaint fails to state a claim as to damages**: Robinson Brog argues that it is entitled to obtain its share of recovery and its expenses from the possible Escala litigation. However, the case was never filed, so any expectation damages are truly speculative. Additionally, there was no provision in any contract for Robinson Brog to be paid for its time and expenses. Thus, the Amended Complaint fails to state a claim for damages.

Accordingly, the O'Quinn Firm is entitled to win on all accounts. The O'Quinn Firm respectfully requests that Robinson Brog's claims be dismissed, or in the alternative, stayed by this Court pending arbitration in Texas.

2

## II.
## ARGUMENT

### A. THIS COURT CANNOT ASSERT SPECIFIC OR GENERAL JURISDICTION OVER THE O'QUINN FIRM

#### 1. There is No Specific Jurisdiction over the O'Quinn Firm.

John O'Quinn met with Robinson Brog on the possible Escala litigation in New York only once. *See* Deposition of James W. ("Wes") Christian ("Christian Depo."), dated November 2, 2011, 51: 18-21, attached as Ex. 1 to the Declaration of Norma N. Bennett ("Bennett Decl.). That meeting was in July 2007, and lasted for approximately four hours. Robinson Brog argues that the contract—the Joint Referral Agreement—that Robinson Brog is now seeking to enforce, was substantially negotiated during that meeting and therefore, the O'Quinn Firm is subject to specific jurisdiction in this Court. In support, Robinson Brog cites federal cases interpreting New York law and certain New York jurisprudence asserting that, in cases where a contract is negotiated in New York, specific jurisdiction may be exercised simply if the negotiations significantly advance the making of the contract. *See Bastille Properties, Inc. v. Hometels of Am., Inc.*, 476 F.Supp. 175, 176-77 (S.D.N.Y. 1979); *see also George Reiner & Co., Inc. v. Schwartz*, 363 N.E.2d 551, 551-552 (1977). However, the analysis is not as simple as Robinson Brog would have one believe. New York jurisprudence indicates that there is no bright-line rule. Instead, an analysis of the circumstances of the surrounding the negotiations is key to resolving whether jurisdiction exists. *Schwartz*, 41 N.Y.2d 648, 652-53.

In *Bastille*, the contract negotiations took place over three consecutive days. *Bastille*, 476 F.Supp. 175, 176. In *Schwartz*, a lawsuit was filed against Schwarz, a former salesman, based on his employment agreement with the plaintiff company. *Schwartz*, 41 N.Y.2d 648, 649. The day Schwartz entered into the employment agreement, he met with the plaintiff and the agreement was reached, and he left with a memorandum of the agreement, which included

information regarding his sales territory, commission rate, and other employment information. *Id.*

The circumstances surrounding John O'Quinn's visit to New York were very different than the circumstances in *Bastille* and *Schwartz*. First, Mr. O'Quinn did not travel to New York specifically for the meeting with Robinson Brog, but instead, to attend the book signing for the Anna Nichole Smith's book. Christian Depo., 66:2-15. And because he would be in New York at the time, Mr. O'Quinn decided to drop by Robinson Brog's offices. *See id.* Second, Mr. O'Quinn never made another trip to New York to Robinson Brog's offices, or for the possible Escala litigation, and neither did anyone else at the O'Quinn Firm. *See id.* at 80:9-15; 80:25-81:9. Additionally, Mr. O'Quinn did not work on the possible Escala litigation, nor did anyone else at the O'Quinn Firm. *Id.* at 44:5-14. Third, not all terms were decided on during that one and only meeting. Robinson Brog cites testimony from the deposition of Wes Christian as support for its contention that the substantive terms of the deal were reached during that single, four-hour meeting. *See* Response, p. 4. However, in testimony that Robinson Brog chooses to conveniently ignore, Wes Christian also testified that the contract signed by the parties four months later was NOT the contract agreed to at the meeting, and that some of the terms in the written contract, which John O'Quinn did not sign, were not included in the oral agreement allegedly reached during the June 2007 meeting. *Id.* at 33:2-24; 74:7-10. Finally, no valid agreement was reached during that meeting. The disciplinary rules of both Texas and New York state that a fee sharing or joint referral agreement must be in writing and signed by the client. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04; *see also* CODE OF PROF'L RESPONSIBILITY DR 2-106 [D] [22 NYCRR 1200.11 (D)]; *see also* Christian Depo., 71:21-72:18.

Because the circumstances of that single meeting reveal that the negotiations regarding the Joint Referral Agreement were not substantial, this Court lacks jurisdiction over the O'Quinn Firm.

**2. General Jurisdiction Does Not Exist over the O'Quinn Firm.**

Robinson Brog's assertion that general jurisdiction over the O'Quinn Firm exists is even more tenuous than its claim of specific jurisdiction. The O'Quinn Firm has never "engaged in continuous, permanent, and substantial activity in New York," such that it can be deemed to be subject to jurisdiction under New York's general jurisdiction statute. *See* N.Y.C.P.L.R. §301. Although Robinson Brog alleges that the O'Quinn Firm represented clients in numerous cases in New York, records indicate that Mr. O'Quinn was never licensed to practice law in New York. Mr. O'Quinn never argued or tried a case in a New York state or federal court. Christian Depo., 77:21-78:4. Robinson Brog also alleges that Mr. O'Quinn met with one or more potential New York clients. Response, p. 10-11. However, according to Wes Christian, Mr. O'Quinn met with only one potential client and it over five or six years ago. *Id.* at 21:8-12. While the O'Quinn Firm did hire a public relations company based in New York, the company was hired primarily for work related to the underlying stock fraud litigation that was to be filed outside of New York. Moreover, while Robinson Brog asserts that the O'Quinn Firm hired New York based experts, it fails to disclose that no one at the O'Quinn Firm worked with these experts, and in fact, the main experts discussed at the June 2007 meeting and subsequently hired in the potential Escala litigation, were based outside of New York. *See id.* at 66:16 - 67:10. Lastly, the O'Quinn Firm has no interests in New York: it has no office, no bank accounts, no property, no phone listing, and has no person permanently located in New York to promote its interests. As such, none of this activity described by Robinson Brog is enough to confer general jurisdiction.

### B. A Transfer of Venue is Warranted

In the event that the Court should find that it has jurisdiction over the O'Quinn Firm, this case should be transferred to Southern District of Texas, Houston Division pursuant to 28 U.S.C. §1406(a). Contrary to Robinson Brog's arguments, the convenience and availability of witnesses does weigh in favor of transfer. Wes Christian, the primary witness in this case lives in Houston, Texas. Mr. Christian has not agreed to testify in New York, converse to the assertion by Robinson Brog. In fact, Mr. Christian's deposition, which has been cited repeatedly by Robinson Brog, was taken by videoconference as Mr. Christian did not want to travel to New York.

In addition, the locus of all activities related to the withdrawal of the O'Quinn Firm from the possible Escala litigation, and any activities affecting the O'Quinn Firm as a result of the death of Mr. O'Quinn are here in Houston, and weighs in favor of transfer. Further, the facts that lead the O'Quinn Firm's decision to withdraw from the possible Escala litigation to be filed in Georgia, and the withdrawal itself, were made in Texas, not in New York.

At present, there are several litigations pending in Texas state courts involving the O'Quinn Firm that were filed after the death of Mr. O'Quinn. The O'Quinn Firm is part of Mr. O'Quinn's estate, and because the pending cases "relate" to his estate, they have been transferred to Harris County, Houston, Texas. In a similar vein, this litigation by Robinson Brog necessarily "relates" to the O'Quinn estate. Hence, it too should be transferred to Houston, Texas-the locus of operative facts.

In summary, the factors discussed above weigh in favor of transfer to the Southern District of Texas and thus, transfer is warranted.

### C. THE COURT SHOULD STAY THIS CASE PURSUANT TO ARBITRATION

Not surprisingly, Robinson Brog attempts to maintain its distance from the Client Agreement as it is desperately trying to avoid arbitration, arguing that this case should not be stayed or dismiss pursuant to arbitration because: (1) it did not exploit or benefit from the Client Agreement; and (2) it could have brought a lawsuit against the O'Quinn Firm even if the Client Agreement did not exist because it is suing on the Joint Referral Agreement, not the Client Agreement.  *See* Response, p. 23.  Robinson Brog's arguments are at best simply wrong, and at worst, disingenuous.

Robinson Brog is suing for expectation damages alleging that the value of its promise to jointly prosecute the possible Escala litigation with the O'Quinn Firm is worth over $12 million dollars, money it would have realized if the O'Quinn Firm had not allegedly breached its promise to fund and prosecute the possible litigation.  However, what Robinson Brog ignores is that its new cash grab[1] fits squarely within the Client Agreement.  In fact, if the possible Escala litigation had become a reality, Robinson Brog could have never received its attorneys' fees outside of the terms of the Client Agreement.

Here is how it works.  The three agreements which structured the representation of the possible Escala litigation clients were: (1) the Joint Referral Agreement, which Robinson Brog is arguably suing on; (2) the Consent to Refer Agreement; and (3) the Power of Attorney and Contingent Fee Contract, or Client Agreement.  These three agreements were not merely related, as Robinson Brog would have the Court believe, but were critical and necessary to any potential recovery of attorneys' fees by Robinson Brog.  Taken together, these three agreements describe how the attorneys in the possible Escala litigation were going to recover their attorneys' fees, which is the gravamen of this case.

---

[1]   Robinson Brog did not sue for expectation damages in its original Complaint.

7

First, the Joint Referral Agreement elicited Robinson Brog's agreement to undertake joint representation of the Escala clients pursuant to Texas Disciplinary Rule of Professional Conduct 1.04. The Joint Referral Agreement states that, "at the conclusion of the [possible Escala litigation], . . . if a recovery [is] made on behalf of Clients," Robinson Brog would be paid "25% of the ***net recovery*** [of] attorney fees." Joint Referral Agreement, ¶ 3. Net recovery was defined as "the amount remaining of the settlement or recovery after reimbursing O'Quinn [the O'Quinn Firm] for any ***charges or expenses of litigation incurred*** by or due to being reimbursed to O'Quinn [the O'Quinn Firm]." *Id.* at ¶ 4 (emphasis added).

Second, the Consent to Refer Agreement, signed by Robinson Brog, Christian, Smith & Jewell ("CS&J"), and each of the clients, made each client aware (1) that Robinson Brog was referring the case to CS&J and the O'Quinn Firm, (2) that Robinson Brog, CS&J and the O'Quinn Firm agreed to share in the recovery of the potential Escala litigation, (3) that Robinson Brog assumed joint responsibility with CS&J and O'Quinn Firm for the prosecution of the clients' cases; and (4) that the law firms sought the consent of each client. *See* Consent to Refer Agreement, attached as Ex. 2 to Bennett Decl., ¶¶ 2-5.

Finally, the Client Agreement contained the contingent fee agreement between the law firms and the clients. *See* Client Agreement generally. The Client Agreement set forth the parameters of the client representation and sought the clients' approval as to the contingency fee agreement. *See id.* at ¶¶ 1.01-1.04. Most importantly, the Client Agreement defined attorneys' fees and how they would be calculated. *See id.* at ¶¶ 2.01-2.04. The Joint Referral Agreement states that Robinson Brog would be paid from the net recovery of attorneys' fees, but fails to provide any further detail as to how to arrive at the net recovery amount.[2] Rather, in order to

---

[2] Net recovery is the amount remaining of the settlement or recovery after reimbursing the attorneys for any charges or expenses of litigation incurred by or due to being reimbursed to attorneys. Joint Referral Agreement, ¶ 3.

determine this amount, one must look to the Client Agreement. In section 6.01 of the Amendment to the Client Agreement aptly entitled "Deduction of Expenses," the Client Agreement lists examples of the types of expenses that would be considered litigation expenses: court costs, deposition expenses, expert witness fees, travel, etc. *See* the Amendment to Client Agreement, ¶ 6.01. The Client Agreement also states that the attorneys should fairly apportion the expenses between this case and any other case that might relate to this case. *See id.* As such, any recovery by Robinson Brog could not be determined solely based on the Joint Referral Agreement alone because there was no way to determine what "expenses" would be subtracted from the attorneys' fees to determine the "net recovery." Additionally, any attorneys' fees that Robinson Brog would have received had the case been filed and a recovery obtained or any damages realized as the result of this lawsuit are necessarily a direct benefit of the Client Agreement. Robinson Brog argues that the value of its promise to jointly represent the clients is over $12 million. But no calculation of the value of that promise can be made without taking into account any expenses that might have been subtracted from any recovery that could have been realized.

Although Robinson Brog is attempting to avoid arbitration, it does not dispute that under the direct benefits estoppel theory, a non-signatory to a contract seeking the benefits of a contract is estopped from, at the same time, attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes. *See Thomson–CSF, S.A v. Am. Arbitration Ass'n,* 64 F.3d 773, 778 (2d Cir.1995). "Direct benefits estoppel applies when a nonsignatory 'knowingly exploits the agreement containing the arbitration clause.'" *See id.*

In arguing against arbitration, Robinson Brog asserts that it could have performed under the Joint Referral Agreement without the Client Agreement. This is not the case. Whether or

9

not Robinson Brog could have validly performed under the Joint Referral Agreement without the Client Agreement is neither the main nor a determinative factor in deciding whether this case should be stayed or dismissed pursuant to arbitration.  What is most important is that Robinson Brog would have not been able to reap *any benefit* from such performance without the Client Agreement.  Because Robinson Brog has always sought, as it does now, to directly benefit from or to appropriate the benefits of the Client Agreement, it cannot now avoid being subject to its burdens.  One such burden is the requirement to arbitrate.  Consequently, Robinson Brog can and must be deemed to have agreed to arbitrate its current claims.  Moreover, because all disputes arising or relating to the Client Agreement are to be arbitrated, and because Robinson Brog's claims arise out of or relate to the Client Agreement, Robinson Brog's claims are within the scope of the arbitration provision.  As a result, this Court should either stay or, in the alternative, dismiss these proceedings pending arbitration.

### D. ROBINSON BROG FAILS TO STATE A CLAIM.

Robinson Brog fails to state a claim as to the damages it alleges it has incurred. Robinson Brog states that under the Joint Referral Agreement, the O'Quinn Law Firm was to "fund the Escala Litigation and pay all associated expenses."  Amended Compl., ¶1. Additionally, Robinson Brog alleges that because the O'Quinn Firm has gone back on its promise to fund the litigation, it is now entitled to expectancy damages of over $12 million. *See* Amended Compl., ¶¶ 33-41, 42-47, 69-76.  Given the circumstances, it is unclear as how these damages could be considered anything but speculative.  Robinson Brog never delivered a draft of a complaint, although it spent over two years performing due diligence.  *See* Christian Decl., 59:22-24; 60:15-16.  Nor was any case ever filed.

Robinson Brog can point to no provision in the Joint Referral Agreement that stated that Robinson Brog was to be paid for its time and expenses.  Wes Christian testified that Robinson

Brog was not to be paid for its time.  *Id.* at 57:10-58:8.  The O'Quinn Firm has never received a demand for payment from Robinson Brog.  Robinson Brog's Amended Complaint supports these contentions.  The Amended Complaint is very detailed—alleging facts as to the time and place of the alleged contract negotiations, what was said at the meeting, the terms of the contract, and its alleged reliance on the contract.  What it is glaring in its absence is any allegation that Robinson Brog ever submitted any invoices or requested any payment for its expenses during the two years that the potential Escala litigation was being worked up and due diligence was taking place prior to Mr. O'Quinn's death.  In fact, others who believed they were to be paid for their time and/or expenses, such as Wes Christian himself, submitted invoices and requests for payment.  *Id.* at 35:13-16.  Thus, because Robinson Brog's damages are either prohibitively speculative, in the case of the expectation damages, or non-existent, as in the case of payment for Robinson Brog's time and expenses, all of Robinson Brog's claims for damages should be dismissed.

## III.
## CONCLUSION

For the foregoing reasons, the O'Quinn Firm respectfully requests that the Court grant the O'Quinn Firm's motions to dismiss.  The O'Quinn Firm also requests any other, further, or alternative relief to which it may be legally or equitably entitled.

        Respectfully submitted,

        MCFALL, BREITBEIL & SMITH, P.C.

        By: /s/ Norma N. Bennett
           Kenneth R. Breitbeil
           Norma N. Bennett
           McFall, Breitbeil & Smith, P.C.
           1250 Four Houston Center
           1331 Lamar Street
           Houston, Texas 77010-3027
           Telephone: (713) 590-9300
           Facsimile: (713) 590-9399

        *Attorneys for Defendant*
        *John M. O'Quinn & Associates, P.L.L.C.*
        *d/b/a The O'Quinn Law Firm*

Of Counsel:

Evan Mandel
MANDEL BHANDARI LLP
11 Broadway, Suite 615
New York, New York 10004
Telephone: (212) 269-5600
Facsimile: (646) 964-6667

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing instrument has been served on all counsel of record in accordance with the Federal Rules of Civil Procedure, on this 9th day of March, 2012, as follows:

    Mr. Alan M. Pollack                                        ***Via ECF***
    ROBINSON BROG LEINWAND
    GREENE GENOVESE & GLUCK P.C.
    875 Third Avenue
    New York, New York 10022

        /s/ Evan Mandel
        Evan Mandel